

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| QBE INSURANCE CORPORATION, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV 08-B-0616-W** |
| | ) | |
| SULLIVAN TRUCKING CO., L.L.C.; | ) | |
| SULLIVAN LUMBER LAND, L.L.C.; | ) | |
| CHARLES SMITH; W.G. SULLIVAN | ) | |
| LUMBER CO., INC.; DEBBIE | ) | |
| LANCASTER, as personal | ) | |
| representative of the Estate of Frankie D. | ) | |
| Lancaster and as mother and next friend | ) | |
| of Dalton Lancaster, a minor, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on plaintiff's Motion for Summary Judgment. (Doc. 29.)[1]  Plaintiff QBE Insurance Corporation has filed this declaratory judgment action seeking a determination of whether it was required to defend and indemnify defendants Sullivan Trucking Co. and Charles Smith in a state-court action brought by defendant Debbie Lancaster, individually, as the personal representative of the estate of her deceased husband, Frankie Lancaster, and as mother and next friend of her son Dalton Lancaster.  Mrs. Lancaster has filed a counter-claim against QBE for malicious prosecution and abuse of process.  QBE now asks the court to declare that it has no obligation to defend

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

and/or indemnify Sullivan Trucking and/or Mr. Smith and to dismiss Mrs. Lancaster's counterclaim.   Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that QBE's Motion for Summary Judgment, (doc. 29), is due to be granted.

## I. <u>SUMMARY JUDGMENT STANDARD</u>

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the

2

non-moving party is to be believed and all justifiable inferences are to be drawn in its favor.

*See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988))(emphasis added).

## II. <u>STATEMENT OF FACTS</u>

The parties set forth the following Undisputed Material Facts in their Joint Status Report:

1. The Underlying Suit, *Lancaster v. Sullivan Trucking Company, Inc.*, *et al.*, pending in the Circuit Court of Tuscaloosa County, Alabama bearing case number CV-08-345, arises as a result of a fatal automobile accident in Tuscaloosa County, Alabama. On November 25, 2007, Charles Smith, an employee of Sullivan Trucking, was operating an eighteen wheel tractor trailer, bearing vehicle identification number 1M1AA18Y2W116536[.]

2. Mr. Smith was en route to Sullivan Lumber to pick up his third and final load of pine bark.

3. While traveling to the lumber yard, Mr. Smith was involved in a motor vehicle accident with a 2005 Dodge 150 Truck bearing vehicle identification number 1D7HA18D458339388 driven by Frankie D. Lancaster.

4. Mr. Lancaster's vehicle included as a passenger his fourteen year old son, Dalton Lancaster.

5. The two vehicle accident occurred at Prewitt Loop Road on Alabama Highway 171 in Tuscaloosa, Alabama at approximately 6:35 p.m.

6. Mr. Lancaster died as a result of the automobile accident.

7. His son, Dalton Lancaster, received non-life threatening injuries as a result of the accident.

3

8.  The Complaint in the Underlying Suit now includes W.G. Sullivan Lumber Co., Inc., as a Defendant.

9.  Pursuant to a Reservation of Rights, QBE obtained outside field adjusters to complete an investigation of this claim.

10.  Sullivan Trucking had two policies of insurance in place at the time of the motor vehicle accident.

11.  Sullivan Trucking had a Commercial Automobile Policy through Sentry Select Insurance Company.

12.  Sullivan Trucking had a Commercial General Liability Policy through QBE.

13.  Sentry Select Insurance Company is defending Sullivan Trucking and Mr. Smith with regard to the Underlying Suit.

14.  Sullivan Lumber was also insured through a Commercial Automobile Policy and is being defended by insurance provider EMC.

15.  QBE issued a commercial general liability insurance policy bearing policy no. ANM19152, effective November 30, 2006 through November 30, 2007 to Sullivan Trucking.

16.  The limit of the liability coverage provided under the CGL Policy is subject to various coverage provisions, endorsements, terms, conditions, limitations, and exclusions.

17.  The CGL Policy includes (among other things) the following general provisions regarding coverage:

SECTION I – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

      a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or

4

"property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) This "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. Exclusions

This insurance does not apply to:

a. Expected Or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to

5

"bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

g.      Aircraft, Auto or Watercraft
        "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

. . .

SECTION II-WHO IS AN INSURED

1.      If you are designated in the Declarations as:

        . . .
        d.      An organization other than a partnership, joint venture or limited liability company you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.   Your stockholders are also insureds but only with respect to their liability as stockholders.

2.      Each of the following is also an insured:

        a.      Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  . . .

. . .

SECTION V- DEFINITIONS

. . .

6

2.      "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3.      "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

5.      "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker".

. . .

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Doc. 28 at 3-9.)

Mrs. Lancaster included additional facts in the Statement of Facts in her Opposition to QBE's Motion for Summary Judgment.  QBE did not admit or deny any of these facts.

The ALND Uniform Initial Order Governing All Further Proceedings states:

The reply submission, if any, shall consist of only the moving party's disputes, if any, with the non-moving party's additional claimed undisputed facts.  The moving party's response to the non-moving party's additional claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the non-moving party's additional claimed undisputed facts.  Any statements of fact that are disputed by the moving party must be followed by a specific reference to those portions of the evidentiary record upon which the disputation is based.  *All additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted by a statement of the movant.*

(Doc. 7 at 18 [emphasis in original].)  Thus, for purposes of deciding QBE's Motion for

Summary Judgment, the court deems QBE to have admitted the following facts as set forth

in Mrs. Lancaster's Opposition:

1.  In paragraph 50 of [Mrs. Lancaster's] Complaint in Circuit Court, [she] alleged that Sullivan Trucking negligently employed or hired, supervised, monitored, trained, investigated, and/or retained Charles Smith as an agent, servant or employee.  [(Doc. 1, Ex. A ¶ 50.)]

2.  Scott Sullivan is the President of Sullivan Trucking Co., Inc.  [(Doc. 36, Ex. A at 15.)]

3.  Mr. Sullivan testified that the primary purpose of Sullivan Trucking is the hauling "of wood waste by-products and lumber for different suppliers."  [(*Id.* at 22.)]

4.  Sullivan Lumber Company is in the business of manufacturing lumber and lumber by-products.  [(*Id.* at 24.)]

5.  Sullivan Trucking and Sullivan Lumber share some employees who perform work on the vehicles and rolling equipment owned by the two companies.  [(*Id.* at 30.)]

6.  Sullivan Trucking Company performs brake-adjustments on their trucks in-house.  In other words, Sullivan Trucking employees adjust the brakes on the trucks.  [(*Id.* at 34.)]

7.  Mr. Sullivan testified that the truck and tractor in question had manual brakes and employees and drivers could just adjust the brakes themselves.  [Footnote 1] [(*Id.* at 39-40.)]

    [Footnote 1:  This is a clear violation of Code of Federal Regulation § 396.25(d), which only allows certified brake adjustment specialists to adjust brakes on the tractor or trailer.]

8.  The State Troopers who investigated the crash determined that two of the brakes on the trailer axles were out of adjustments.  [(*Id.* at 44-45.)]

9.      The investigating trooper also cited Sullivan Trucking for operating a commercial vehicle without a periodic inspection.  [(*Id*. at 47-48.)]

10.     Charles Smith, the driver involved in the wreck with Mr. Lancaster, started working for Sullivan Trucking in December 2000.  [Footnote 2] [(*Id*. at 59.)]

> [Footnote 2:  In the underlying lawsuit in Circuit Court, [Mrs. Lancaster] contends that Charles Smith was a dual agent, servant and/or employee of Sullivan Lumber and Sullivan Trucking.  For the sake of brevity, the nonmovant refers only to Smith's employment with Sullivan Trucking.  However, the nonmovant is not waiving or forfeiting any claims that Smith worked jointly for Sullivan Lumber and Sullivan Trucking.]

11.     The Driver Fitness Determination produced by Sullivan Trucking in the underlying litigation shows that Mr. Smith, in August 2007, had a past medical history of shoulder surgery, mitral valve prolapse and emphysema.  [(*Id*. at 61; *id*., Ex. B.)]

12.     The Driver Fitness Determination for Charles Smith of September 2005 shows that Mr. Smith also had a fusion at C6-C7 of his neck.  [*Id*., Ex. C.)]

13.     Mr. Smith's personnel file from Sullivan Trucking indicates that he was ticketed for running a red light on July 30, 2004.  [*Id*., Ex. A at 69-70; *id*., Ex. D.)]

14.     Mr. Smith had an accident in August 2003 and an accident in November of 2001.  [(*Id*., Ex. A at 74; *id*., Ex. D.)]

15.     He was also involved in a collision on October 2, 2001.  [(*Id*., Ex. A at 78; *id*., Ex. D.)]

16.     Mr. Smith was involved in a collision in Shelby County, Alabama on September 4, 2006.  [(*Id*., Ex. A at 75; *id*., Ex. D.)]

17.     Mr. Smith received a speeding ticket in 1999 for traveling 85 in a 70 mph zone.  [(*Id*., Ex. A at 75-76; *id*., Ex. D.)]

18.   Mr. Smith received a speeding ticket in 1998 in Florida.  [(*Id.*, Ex. A at 76; *id.*, Ex. D.)]

19.   Mr. Smith received a citation in May of 2007 for traveling 62 in a 45 mph zone.  [(*Id.*, Ex. A at 76; *id.*, Ex. D.)]

20.   On June 28, 2001, Mr. Smith was involved in a crash in Hale County, Alabama.  [(*Id.*, Ex. A at 79; *id.*, Ex. D.)]

21.   On July 3, 2001, Mr. Smith received a citation for improper equipment.  [(*Id.*, Ex. A at 79; *id.*, Ex. D.)]

22.   In November 2004, Doralyn Sparks sued Charles Smith and Sullivan Trucking for a collision involving Mr. Smith where he was driving a Sullivan Trucking vehicle.  [(*Id.*, Ex. A at 80-81; *id.*, Ex. E.)]

23.   The CGL policy issued by QBE is a standard form policy issued by the Insurance Services Office [hereinafter "ISO"].  [Footnote 3]  [(Doc. 1, Ex. B at 57.)][2]

> [Footnote 3:  " [The] ISO is a nationwide organization which drafts standard insurance forms for its member insurance companies, collects loss data, and estimates risks relevant to forms." *Doyle v. Safeco Ins. Co.*, 2008 WL 5070055[, *1 n.2] (E.D. Cal. 2008).  [ ]The standardize[d] Commercial General Liability Coverage Form was prepared by I.S.O. and ["]contains common terms and provisions used by insurers across the country.  Courts from many jurisdictions have evaluated ISO's form policy language." *Beaverdam Contracting v. Erie Ins. Co.*, 2008 WL 4378153[, *6 n.6] (Ohio App. 3 Dist. 2008).

24.   The CGL policy issued by QBE Ins. Corp. contains an exclusion for autos.  The exclusion states, in part:

. . .

---

[2]The court's citation to page numbers for Exhibit B to the Complaint refer to the page numbers as set forth in document 1-3 of the CM/ECF electronic filing system.

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

[(Doc. 1, Ex. B at 59.)]

25.    The CGL policy (# ANM19152-4) issued to Sullivan Trucking was issued by QBE Ins. Corp., effective on November 30, 2006. [*Id*. at 4.)]

26.    The particular language for the above exclusion was drafted by the [ISO] in 1997. [(*See id*. at 59.)]

27.    On November 30, 2006, Sullivan Lumber Company, the sister company of Sullivan Trucking, was issued a CGL policy through Employers Mutual Insurance Company. [Footnote 4] [(Doc. 36, Ex. F at 2.)][3]

        [Footnote 4: Both CGL policies were issued through the same insurance agent, Fitts Agency, Inc. [(Doc. 36, Ex. F at 2; doc.1, Ex. B at 2.)]

28.    Like the QBE policy issued to Sullivan Trucking, the CGL policy issued to Sullivan Lumber by Employers Mut. Cas. Co., is also an ISO policy. [(Doc. 36, Ex. F at 11.)]

29.    Like the QBE policy issued to Sullivan Trucking, the CGL policy issued by Employers Mut. Cas. Co. to Sullivan Lumber also contains an exclusion for autos. [(*Id*.)]

30.    While the QBE exclusion is an I.S.O. form policy from 1997, the EMC exclusion is an I.S.O. form policy from 2003. [(Doc. 1, Ex. B at 59; doc. 36, Ex. F at 11.)]

31.    Like the QBE policy, the policy issued by EMC also contains an exclusion for autos. For the most part, it was written exactly like the

_____

[3]The court's citation to page numbers for Exhibit F of Mrs. Lancaster's Opposition refer to the page numbers as set forth in document 36-9 of the CM/ECF electronic filing system.

policy exclusion issued by QBE.  [(*Compare* doc. 1, Ex. B at 59 *with* doc. 36, Ex. F at 11.)]

32.   One very important and key difference between the two (2) CGL policies is that the policy issued by EMC specifically excludes claims for negligent hiring and supervision **WITHIN THE AUTO EXCLUSION ITSELF**.  **The QBE policy does not contain any language in the policy excluding negligent hiring or supervision claims**.  [(*Compare* doc. 1, Ex. B at 59 *with* doc. 36, Ex. F at 11.)]

33.   Both policies are I.S.O. policies.  However, the I.S.O. policy issued by EMC to Sullivan Lumber is dated 2003 whereas the QBE policy is dated 1997.  [(*Compare* doc. 1, Ex. B at 59 *with* doc. 36, Ex. F at 11.)]

34.   The EMC policy exclusion is written this way:

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."

**This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or watercraft that is owned or operated by or rented or loaned to any insured**."

[(Doc. 36, Ex. F at 11.)]  (Emphasis added).

35.   It is undisputed that QBE is the drafter of the CGL policy to Sullivan Trucking. QBE chose not to include the language in the auto exclusion that also excluded negligent hiring and supervision claims in relation to auto claims.

36.   The I.S.O. updated its auto exclusion in 2003 to exclude negligent hiring and supervision claims in relation to autos.  [(*See* doc. 36, Ex. F.)]

37.     Even though QBE issued the policy to Sullivan Trucking in 2006, QBE chose to use the standard I.S.O. exclusion that was written in 1997. [(*Compare* doc. 1, Ex. B § I *with* doc. 36, Ex. F § I.)]

38.     The policy written by QBE does not exclude negligent hiring and supervision claims anywhere in the policy, and certainly not in the auto exclusion.  [(Doc. 1, Ex. B § I.)]

(Doc. 36 at 3-11 [emphasis in original].)

On or about April 2, 2008, defendant Debbie Lancaster, as mother and next friend of Dalton Lancaster, and as personal representative of the estate of Frankie D. Lancaster, filed an action against Sullivan Lumber Land,[4] Sullivan Trucking, Charles Smith, and nine fictitious defendants in the Circuit Court of Tuscaloosa County, Alabama.  (Doc. 1, Ex. A.) In her Complaint, Mrs. Lancaster alleged nine counts:

Count I – "Negligence/Wantonness" against all defendants, (*id*. ¶¶ 37-43);
Count II – "Entrustment" against Sullivan Lumber Land and/or Sullivan Trucking, (*id* ¶¶ 45-48);
Count III – "Hiring/Supervision/Training/Retention" against Sullivan Lumber Land and Sullivan Trucking, (*id*. ¶¶ 50-52);

---

[4]The court notes that QBE's Amended Complaint is ambiguous as to whether it asserts a claim against Sullivan Lumber Land.  (*See* doc. 18 at 1-2 ["Petitioner QBE Insurance Corporation . . . files this Complaint for Declaratory Judgment seeking a determination that it owes no coverage to W.G. Sullivan Lumber Co., Inc. ("Sullivan Lumber"); Sullivan Trucking Co., Inc. ("Sullivan Trucking"); Sullivan Lumber Land, LLC; Charles Smith ("Mr. Smith"); Debbie Lancaster, as Personal Representative of the Estate of Frankie D. Lancaster and as Mother and Next Friend to Dalton Lancaster, a minor under the Commercial General Liability Policy QBE issued to Sullivan Trucking . . . ."]; *see also id*. ¶¶ 2-5 [listing only Sullivan Trucking, W.G. Sullivan Lumber, Smith, and Mrs. Lancaster as defendants]; n.1 ["Sullivan Lumber Land, LLC was originally a party to the Underlying Suit; however, by an April 23, 2008 Order issued by Circuit Judge Scott Donaldson, Sullivan Lumber Land, LLC was dismissed without prejudice"].)

Count IV – "Combining and Concurring" against all defendants, (*id*. ¶¶ 54-55);

Count V – "Failure to Keep a Lookout and Drive at a Reasonable and Prudent Speed" against Mr. Smith, (*id*. ¶¶ 57-59);

Count VI – "*Respondeat Superior*" against Sullivan Lumber Land,  and Sullivan Trucking, (*id*. ¶¶ 61-62);

Count VII – "Negligent Maintenance of Vehicle" presumably against Sullivan Lumber Land and Sullivan Trucking, but not specified, (*id*. ¶¶ 64-66);

Count VIII – "Defective Equipment" against Sullivan Lumber Land and Sullivan Trucking, (*id*. ¶¶ 68-70); and

Count IX – "Mental/Physical Condition of Driver against Smith, (*id*. ¶¶ 72-73).

On April 8, 2008, QBE filed its "Complaint for Declaratory Judgment That Insurance Policy Does Not Afford Coverage" against Sullivan Trucking, Sullivan Lumber Land, and Charles Smith.  (Doc. 1.)  It amended its Complaint to dismiss defendant Sullivan Lumber Land, and to add defendants W.G. Sullivan Lumber Co. and Debbie Lancaster, as personal representative of the estate of Frankie D. Lancaster and as the mother and next friend of Dalton Lancaster.  (*See* doc. 18.)  Mrs. Lancaster filed a counterclaim against QBE for malicious prosecution and abuse of process.  (Doc. 21 ¶¶ 39-43.)

## III.  **DISCUSSION**

QBE asks the court to declare that it has no obligation to defend and/or indemnify the defendants in the underlying state-court action and to dismiss Mrs. Lancaster's counterclaim. For the reasons set forth below, the court finds that QBE has no duty to defend and/or indemnify Sullivan Trucking, Sullivan Lumber Land, W.G. Sullivan Lumber, and/or Charles Smith.  Finally the court finds that QBE's Motion for Summary Judgment is due to be granted and Mrs. Lancaster's counterclaim dismissed.

14

**A.  QBE'S DECLARATORY JUDGMENT**

"This court will construe an insurance contract as it is written when its meaning is unambiguous and clear." *General Agents Ins. Co. of America, Inc. v. Compton,* 921 F. Supp. 716, 721 (N.D. Ala. 1996)(citing *Southeastern Fire Ins. Co. v. Heard*, 626 F. Supp. 476, 477 (N.D. Ga.1985).  The court must interpret the terms of an insurance contract in a rational and practical manner and only those clauses that are ambiguous may be favorably construed for the insured.  *Id.* at 721-22 (citing *Green v. Merrill,* 308 So.2d 702, 704 (Ala. 1975); *Alabama Farm Bureau Mut. Casualty Ins. Co., Inc. v. Goodman,* 188 So.2d 268, 270 (Ala. 1966)).  Additionally, the Alabama Supreme Court has held,

> [i]n the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy;  and the courts have no right to add anything to their contracts, or to take anything from them.

*Alabama Farm Bureau Mut. Casualty Ins. Co., Inc. v. Goodman*, 188 So.2d 268, 270 (Ala. 1966); *see also Compton,* 921 F. Supp. at 722.  QBE contends that its policy does not provide coverage to Sullivan Lumber Land and W.G. Sullivan Lumber because these defendants are not insureds under the policy.  It contends that the policy does not provide coverage to Sullivan Trucking and Mr. Smith because the claims arising from the accident are excluded under the terms of the policy.

### 1.  Sullivan Lumber Land and W.G. Sullivan Lumber Co.

Under the terms of the policy, QBE agrees to pay "those sums that the Insured becomes legally obligated to pay as damages because of bodily injury or property damage to which [the] insurance applies," and it has "the right and the duty to defend the Insured against any suit seeking [such] damages." (Doc. 1, Ex. B at 57 [internal quotations omitted].) The policy defines "Insured" as the entity designated in the Declarations as the named insured.  (*Id*. at 63.)  In this case, the policy names Sullivan Trucking Company, Inc.  (*Id*. at 4.)  Therefore, the policy at issue provides coverage to Sullivan Trucking.

With certain exceptions not at issue in this case, the policy also states that employees of the insured are also insureds "for acts within the scope of their employment [with the named insured] or while performing duties related to the conduct of [the named insured's] business."  (*Id*. at 63.)  Therefore, Charles Smith, who the parties agree was acting as Sullivan Trucking's employee at the time of the accident, is insured under the policy.

However, the court has not found any provision that expressly or implicitly provides coverage for Sullivan Lumber Land and/or W.G. Sullivan Lumber.  Therefore, the court will grant QBE's Motion for Summary Judgment as to Sullivan Lumber Land and/or W.G. Sullivan Lumber and declare that QBE is not required to provide a defense and/or indemnity for these defendants in the underlying state-court action.

16

### 2. Sullivan Trucking and Charles Smith

QBE contends that is has no duty to defend and/or indemnify Sullivan Trucking and Mr. Smith because the claims in the underlying state-court action are specifically excluded under the Aircraft, Auto Or Watercraft" exclusion [hereinafter "Auto exclusion"]. The Auto exclusion states:

> This Insurance does not apply to:
>
> Bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading and unloading.

(*Id*. at 59.) The plain language of the auto exclusion excludes all claims in the underlying state-court action, except Count III, "Hiring/Supervision/Training/Retention" claim, which is not asserted against Mr. Smith. Therefore, QBE's Motion for Summary Judgment as to claims against Mr. Smith is due to be granted; the court will enter an Order declaring that QBE has no duty to defend and/or indemnify Charles Smith in the underlying state-court action.

Sullivan Trucking and Mrs. Lancaster contend that the policy at issue provides coverage for the claim of negligent and/or wanton hiring, supervision, training, and/or retention. Specifically, they point to similar language in a policy issued to W.G. Sullivan Lumber , which adds the following to its auto exclusion:

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the

17

"bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . that is owned or operated by . . . any insured.

(Doc. 36, Ex. F at 11.)

Evidence of the W.G. Sullivan Lumber policy, although probative of what alternative provisions were available to QBE, does not dispose of the question of whether the auto exclusion at issue covers Mrs. Lancaster's hiring, supervision, training, and/or retention claim.

As set forth above, the auto exclusion excludes claims of bodily injury or property damage arising out of the ownership or use of Sullivan Trucking's autos. Therefore, the policy excludes coverage for injuries and damages caused by ownership or use of the auto, not merely legal claims based on auto use. *See* ; *see also St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So. 2d 1375, 1377 (Ala. 1992)("[The policy at issue] clearly excludes coverage for any injury, including one that results in death, due to the ownership or use of any "auto," which includes the van in question, owned or operated by [defendants]. Although liability on the part of [defendants] appears to have been predicated on something other than a finding that [the defendant driver] had acted negligently in operating the van (i.e., a finding that [the driver] had acted negligently in transporting Randy; a finding that [the owner of the vehicle] had acted negligently in not properly training or supervising [the driver; or a finding that the [the owner of the vehicle] had acted negligently in not implementing certain policies or procedures to protect Randy), the fact remains that

18

Randy died in the van while it was being used by [the owner] to provide transportation services to the communities it serves. We conclude, therefore, that Randy's death was due to the ownership or use of the van and, consequently, that the automobile exclusion prevents coverage under the general liability portion of the policy."); *see also* Allan D. Windt, 2 INSURANCE CLAIMS AND DISPUTES § 11:22 (5th ed. Mar. 2009)("[Courts] have failed to recognize that the exclusion should be applicable whether or not the ***claim*** against the insured is related to the ownership or use of the vehicle; it is enough that the ***injuries*** alleged were caused by the use of the vehicle." (emphasis added)).   The Alabama Supreme Court, interpreting similar language, found that the auto exclusion unambiguously excluded coverage for injuries arising from a motor vehicle accident based on a claim of negligent supervision.[5]  *Alfa Mut. Ins. Co. v. Jones*, 555 So. 2d 77, 78 (Ala. 1989)(citing *Cooter v.*

---

[5]  The court stated:

> The exclusion clause upon which Alfa relies provides:
>
> "Coverage E . . . [does] not apply to:
>
> ". . . .
>
> "e. bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:
>
> ". . . .
>
> "(2) a motor vehicle owned or operated by or rented or loaned to an insured; . . . ."
>
> We considered a nearly identical clause in *Cooter v. State Farm Fire &*

*State Farm Fire & Cas. Co.*, 344 So. 2d 496, (Ala. 1977); quoting *Bankert v. Threshermen's Mutual Ins. Co.*, 329 N.W.2d 150 (Wisc. 1983)).

---

*Cas. Co.*, 344 So. 2d 496 (Ala. 1977).  In *Cooter*, the plaintiff pressed a claim on behalf of her incompetent son against the owner of the vehicle that her son was driving.  Her theory of recovery was negligent entrustment.  State Farm sought a declaration that the vehicle owner's policy of homeowner's insurance did not apply.  We found in State Farm's favor.  Our holding was premised upon the fact that the nexus between State Farm, the entruster, and the plaintiff was the occurrence ***in a motor vehicle*** of the accident made the basis of the lawsuit.

Looking back at the pertinent exclusion clause in this case, we find that no coverage is provided for "bodily injury . . . arising out of the ownership . . . of . . . a motor vehicle owned . . . by . . . an insured."  That clause is unambiguous, just as it was unambiguous in *Cooter*.  And, as the facts of this case demonstrate, the plaintiff's negligent supervision theory seeks recovery for a death arising out of the ownership of a motor vehicle owned by the insureds.  That ownership of a motor vehicle is the very nexus between Alfa, the Joneses, and the plaintiff.  We hold that the exclusion clause is effective, and that Alfa is neither obligated to provide coverage for, nor to defend, the Joneses.  See also *Bankert v. Threshermen's Mutual Ins. Co.*, 110 Wis. 2d 469, 329 N.W.2d 150 (1983), wherein the court, interpreting a nearly identical exclusion clause under factually similar circumstances, and relying in part on *Cooter*, stated:

> "We also agree with the court of appeals' analysis in respect to 'negligent supervision' or, alternatively stated, 'failure to control.' This conduct by Richard's parents relates directly to the manner of operation of the vehicle, *i.e.*, its negligent use.  There appears to be no reasonable doubt that the two areas or theories of liability on which the plaintiffs rely are intimately connected with the very types of coverages which are expressly excluded."

*Id*. at 480-81, 329 N.W.2d at 155.

*Alfa Mutual Insurance Co.*, 555 So. 2d at 77-78.

> [T]he majority of those courts which have addressed the question of whether a claim of negligent hiring, retention, and supervision fits within the policy exclusions where the accident complained of is an automobile accident . . . have found that the policy exclusion applies.  . . .  The theory of these cases . . . is that the motor vehicle exclusion is not based upon the theory of liability inherent in a claim.  Rather, the policy is said to not apply to any claim regardless of the theory of liability when that claim is for bodily injury arising out of operation of any motor vehicle owned by the insured.

*Marquis v. State Farm Fire and Casualty Co.*, 961 P.2d 1213, 1226 (Kan. 1998)(Larson J.,

concurring and dissenting)(citing *Alfa Mutual Insurance Co.*, 555 So. 2d 77; quoting

*American Universal Insurance Co. v. Cummings*, 475 A.2d 1136, 1137-38 (Me.

1984)(internal citations and quotations omitted).

Mrs. Lancaster's claim for negligent and/or wanton hiring, supervision, training,

and/or retention is for bodily injury arising from the ownership or use of a vehicle owned by

Sullivan Trucking.  Therefore, such claim is excluded under the auto exclusion in the QBE

policy at issue and QBE's motion for summary judgment is due to be granted.

**B.  MRS. LANCASTER'S COUNTERCLAIM – MALICIOUS PROSECUTION**

Mrs. Lancaster has filed a counterclaim against QBE for malicious prosecution and

abuse of process.  (Doc. 21 ¶¶ 39-43.)  She alleges:

> 39.    On or about May 1, 2008, QBE unlawfully filed suit against Debbie Lancaster.

> 40.    QBE's claims handling procedures unlawfully use the court system to further their aims of recapturing money from their own policyholders through the systemic and illegal underpayment of claims, and/or their wholesale refusal to indemnify and defend insureds.

41.     This unlawful and malicious prosecution of Mrs. Lancaster also
        constitutes an abuse of process.

42.     It is unconscionable that an insurance company would sue a recently
        widowed woman in order to gain a perceived advantage in negotiation
        and position with its insureds.  This is particularly troublesome in light
        of the loss of her husband and the serious injuries to her son.

43.     As a proximate result, Mrs. Lancaster suffered harm and injury,
        including emotional injuries.

(*Id.*)

The court notes that "tort claimants are indispensable parties in declaratory judgment actions over coverage." *Andalusia Enterprises, Inc. v. Evanston Insurance Co.*, 487 F. Supp. 2d 1290, 1294 (N.D. Ala. 2007)(citing *American Safety Casualty Ins. Co. v. Condor Associates Ltd.*, 129 Fed. Appx. 540 (11th Cir. 2005)(citing *Ranger Ins. Co. v. United Housing of New Mexico*, 488 F.2d 682 (5th Cir. 1974))).  Therefore, QBE did not "***unlawfully*** file[ ] suit against Debbie Lancaster."  (See doc. 21 ¶ 39 [emphasis added].)

In Alabama, "The elements of malicious prosecution are:  (1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage.  *Cutts v. American United Life Ins. Co.*, 505 So. 2d 1211, 1214 (Ala. 1987)(citing *Allen v. Molton, Allen & Williams Realty Co.*, 495 So. 2d 27 (Ala.1986); *Johnson v. Haynie*, 414 So.2d 946 (Ala.1982); *Brown v. Parnell*, 386 So.2d 1137 (Ala.1980); *S.S. Kresge Co. v. Ruby*, 348 So.2d 484 (Ala.1977); *Sanders v. Davis*, 153 Ala. 375, 44 So. 979 (1907)).  "When probable cause exists, proof of the highest degree of malice gains the plaintiff nothing.  Yet, when probable cause is shown to be lacking, malice is

essential to recovery." *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 832 (Ala. 1999)(internal citations omitted).

> Probable cause is defined in the criminal context as "a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." *Fina Oil* [*& Chemical Co. v. Hood*, 621 So. 2d 253,] 257 [(Ala.1993)], quoting earlier cases. In a civil proceeding, all that is necessary for probable cause is that the claimant "reasonably believe that there is a chance that [the] claim may be held valid upon adjudication." [*Id.*]

*Leak v. Avco Financial Services*, 646 So. 2d 642, 644 (Ala. 1994).

Because Mrs. Lancaster was an indispensable party to QBE's declaratory judgment action, probable cause exists to name her as a defendant in this case. Therefore, because probable cause exists, Mrs. Lancaster cannot maintain an action for malicious prosecution. Therefore, QBE's Motion for Summary Judgment will be granted and Mrs. Lancaster counterclaim for malicious prosecution will be dismissed.

Mrs. Lancaster also alleges a cause of action against QBE for abuse of process. In Alabama, "The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *Willis v. Parker*, 814 So. 2d 857, 865 (Ala. 2001)(internal quotations and citations omitted). "The tort of abuse of process differs from the tort of malicious prosecution; the tort of abuse of process is concerned with the wrongful use of process after it has been issued, while the tort of malicious prosecution is concerned with the wrongful issuance of process." *Id.* (internal citations and quotations omitted). "***If the action is confined to its regular and legitimate function*** in relation to the

cause of action stated in the complaint ***there is no abuse***." *Id.* (internal citations and quotations omitted; emphasis in original).

Mrs. Lancaster does not allege that QBE has wrongfully used this action after it was filed.  Indeed, the record appears uncontradicted that this declaratory judgment action has been confined to its regular and legitimate function, which is to determine QBE's obligations under the policy at issue.  Therefore, QBE's Motion for Summary Judgment will be granted and Mrs. Lancaster's claim of abuse of process will be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment, (doc. 29), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 13th day of May, 2009.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE